**In the United States District Court
for the District of Kansas**

───────────

Case No. 24-cv-02318-TC-TJJ

───────────

BRADLEY DEAN SCHOLTZ,

*Plaintiff*

v.

KELLY JOHANSEN, ET AL.,

*Defendants*

───────────

**MEMORANDUM AND ORDER**

Bradley Scholz sued two Atchison County Sheriff's Deputies, the Atchison County Sheriff, and an Atchison County Attorney, alleging that they violated his civil rights as part of a state-court prosecution.[1] Doc. 14. In response, Defendants filed a motion to dismiss. Doc. 19. For the following reasons, that motion is granted.

**I**

**A**

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] It appears that Plaintiff's name is Bradley Scholz. *See generally* Doc. 14 (amended complaint using "Scholz" rather than "Scholtz"); *see also* Doc. 19-1 (records from the Atchison County, Kansas, District Court using "Scholz"). Although the caption will remain unchanged, this Memorandum and Order will use the spelling provided in the more recent pleadings.

1

Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

This case arises from the investigation, prosecution, and conviction of Scholz in Atchison County, Kansas. Doc. 14 at ¶ 1.[2] The following attempts to describe the factual and procedural history deduced from Scholz's Amended Complaint.[3]

---

[2] All document citations are to the document and page numbers assigned in the CM/ECF system.

[3] Federal Rule of Civil Procedure 8 requires a "short and plain statement" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Scholz's Amended Complaint is neither. Doc. 14. As a result, this Memorandum and Order endeavors to construe Scholz's allegations as it appears they were intended.

**1.** In early July 2022, Scholz invited L.L. and L.I., two minor girls, to babysit for him at his home. Doc. 14 at ¶¶ 17, 54. Exactly what transpired at Scholz's home is unclear, but L.L. subsequently spoke with her father, Luke Lednicky, about Scholz's behavior. *Id.* at ¶ 33. Lednicky then phoned the Atchison County Sheriff's Office to report that Scholz had sexually assaulted his minor daughter. *Id.* Lednicky explained that an incident had occurred at Scholz's home. *Id.* at ¶¶ 33, 52, 54. He relayed this information to Defendant Kelly Johansen, an Atchison County Sheriff's Deputy. *Id.* at ¶¶ 9, 33.

Johansen performed a forensic interview of L.L. Doc. 14 at ¶¶ 30, 42, 51, 56. L.L. explained that she was locked in a bedroom at Scholz's home. *Id.* ¶ 30. She indicated that Scholz had touched her, although she could not remember exactly what had happened. *Id.* at ¶ 51. L.L. explained that she had not reported the specific details of the incident to anyone until the forensic interview. *Id.* at ¶ 16.

Johansen visited Scholz at his home on August 4, 2022. Doc. 14 at ¶¶ 40, 118. Defendant James Stewart, also an Atchison County Sheriff's Deputy, accompanied Johansen. *Id.* at ¶¶ 10, 40, 118. The deputies informed Scholz that they wanted to speak with him at the police station, and Scholz agreed to accompany them. *Id.* at ¶ 40. They interviewed Scholz at the station and ultimately arrested him later that evening.[4] *Id.* at ¶ 86. His bail was set at $500,000. *Id.* at ¶ 86. Johansen and Stewart submitted probable cause affidavits that were used to procure warrants to arrest Scholz and search his home. Doc. 14 at ¶¶ 38, 39.

**2.** Scholz was charged with indecent liberties with a child and indecent solicitation of a child. Doc. 14 at ¶ 38; *see State v. Scholz*, No. 2022-CR-000144 (Atchison County, Kansas, District Court); Doc. 19-1. Defendant Sherri Becker was the Atchison County prosecutor who initially brought charges against Scholz. Doc. 14 at ¶¶ 1, 11, 35, 36. State records reflect that Becker voluntarily recused herself from the case, and the Johnson County, Kansas, District Attorney's Office was appointed to replace her.[5] Doc. 19-1 at 12, 14. It is unclear why Becker

---

[4] It is not clear when Scholz was arrested. *Compare* Doc. 14 at ¶ 38 (alleging that Scholz was served with a warrant on August 5), *with* Doc. 14 at ¶ 86 (alleging that Scholz was arrested on August 4).

[5] Federal courts may take judicial notice of other courts' publicly filed records. *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023).

recused from the case, but Scholz's Amended Complaint suggests that she was conflicted because of her personal relationships with L.L.'s family. *See, e.g.*, Doc 14 at ¶¶ 36, 82, 99.

On January 13, 2025, Scholz pled guilty to aggravated battery. *See* Doc. 24-1 at 5; *State v. Scholz*, No. 2022-CR-000144 (Atchison County, Kansas, District Court), Index Nos. 172, 179. He was sentenced to a term of 32 months imprisonment, all of which but thirty days were suspended, the thirty days to be served on fifteen weekends. *Scholz*, No. 2022-CR-000144, Index No. 179.

**3.** While his criminal case was ongoing, Scholz filed this suit. Doc. 14. In general, he attacks the validity of the criminal investigation and resulting prosecution. *Id.* His Amended Complaint describes multiple instances of allegedly negligent conduct that he attributes to the law enforcement officers who investigated L.L.'s claims and prosecuted him. *See, e.g.*, *id.* at ¶¶ 27, 55, 58, 62, 63, 76, 105.

Scholz styles his Amended Complaint as bringing three counts under 42 U.S.C. § 1983. In Count I, Scholz asserts that the Atchison County Sheriff's Department is responsible for negligent failure to train and supervise its officers. Doc. 14 at ¶¶ 13–72 (detailing instances of allegedly negligent conduct by officers in the investigation). In Count II, he titles his claim as retaliation and retaliatory arrest, but the substance of his contentions seems most directly focused on the initiation of criminal charges without any basis or support. *Id.* at ¶¶ 73–106 (detailing the arrest and initiation of charges despite the lack of probable cause). And finally, Count III is styled as an abuse of process claim, describing acts and omissions against the prosecutor (Becker) and investigating officer (Stewart) concerning the factual investigation. *Id.* at ¶¶ 74–131 (describing acts that had the effect of leveraging the legal process to induce Scholz to say things that improperly led to his arrest).

Defendants moved to dismiss. Doc. 19. They argue that Scholz's claims have not accrued, that they are entitled to prosecutorial and qualified immunity, and that Scholz fails to state a claim. *Id.* As noted above, Scholz pled guilty to the state criminal charges while the motion to dismiss his claims was being briefed. Doc. 24-1 at 5; *see State v. Scholz*, No. 2022-CR-000144 (Atchison County, Kansas, District Court), Index No. 179.

**II**

Scholz asserted various constitutional claims against individuals and entities concerning the criminal charges that had been brought against him. But then he pled guilty. As a result, his claims fail as a matter of law.

### A

Scholz asserts claims against Defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). To state a viable Section 1983 claim, a plaintiff must establish that a person acting under color of state law caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Following *Twombly* and *Iqbal*, the Tenth Circuit observed that it is "particularly important" that a "complaint make clear exactly who is alleged to have done what to whom," especially in complex Section 1983 cases containing multiple claims against several defendants with varying claims to immunity. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008); *see also Bledsoe v. Carreno*, 53 F.4th 589, 606–07 (10th Cir. 2022) (same). Part of the rationale for this rule is to allow defendants to "ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250. This means plaintiffs are required to make it "clear exactly who is alleged to have done what to whom," as distinguished from collective allegations. *Id.* (citation and internal quotation marks omitted). That level of detail is necessary to satisfy the causation element of a Section 1983 claim. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009); *see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). As such, "[a] plaintiff in a § 1983 action must allege that each defendant is subject to personal liability based on his [or her] own actions." *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024).

**B**

The substance of Scholz's claims against the individual defendants—Counts II and III—concerns alleged acts and omissions leading up to and following his arrest. The allegations assert that these individual defendants were negligent in the way they conducted the investigation, processed the scene, engaged with Scholz prior to and after his arrest, and presented evidence. In essence, he contends that the individual defendants engaged in conduct that is akin to malicious prosecution and abuse of process. *See Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (noting that courts must look to the substance of claims).

Scholz's claims implicate the rules established in two Supreme Court cases. In the first case, the Court held that no Section 1983 claim concerning the administration of the criminal process is permitted unless the Section 1983 plaintiff establishes that the conviction was reversed on direct appeal or otherwise declared invalid. *Heck v. Humphrey*, 512 U.S. 477, 487 & n.5 (1994) (recognizing that this rule applies to any malicious prosecution or abuse of process claim that would imply the invalidity of a conviction). Then, building naturally off that rule, the Court held that such a claim cannot even accrue prior to the favorable termination of the plaintiff's prosecution. *McDonough v. Smith*, 588 U.S. 109, 117–18 (2019) (applying *Heck*'s rule that is motivated by a desire to avoid parallel litigation, the fear of conflicting judgments, and collateral attacks on criminal judgments through civil litigation); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) (holding that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," but only "that the criminal prosecution ended without a conviction.").

These rules require dismissal of Counts II and III. Throughout the entirety of his Amended Complaint, Scholz alleges that the ongoing criminal proceedings were marred by negligent conduct during the investigation, interviews of witnesses, prosecutorial decisions, and the

like.⁶ And Scholz contends that he suffered financial damages because of those acts, including being forced to post bond. Despite these alleged wrongs, it is undisputed that the criminal case against Scholz resulted in him pleading guilty in January 2025 to aggravated battery, and that he was sentenced in March 2025 to serve a custodial sentence. Doc. 24 at 1 n.1; *accord State v. Scholz*, No. 2022-CR-000144 (Atchison County, Kansas, District Court), Index No. 179.⁷ This means that Scholz filed his federal suit before his claims accrued, *McDonough*, 588 U.S. at 117, and that they will never accrue unless and until his conviction is reversed on appeal, *Heck*, 512 U.S. at 487. As a result, Scholz has not and cannot state a claim. *See Montoya v. Vigil*, 898 F.3d 1056, 1068 (10th Cir. 2018) (reversing the district court's denial of a motion to dismiss where the plaintiff "failed to allege a favorable termination as a matter of law"); *M.G. v. Young*, 826 F.3d 1259, 1264 (10th Cir. 2016) (affirming the district court's grant of summary judgment for the defendant where the plaintiff failed to satisfy the favorable-termination element); *see also Glaser v. City & Cnty. of Denver, Colorado*, 755 F. App'x 852, 856 (10th Cir. 2019) (affirming the district court's dismissal when

---

⁶ There are many other reasons to dismiss Scholz's claims. For example, most, if not all, of Scholz's allegations appear to be framed in the rubric of a general negligence claim that is adorned with Section 1983 language. That will not do: Negligence—even grossly negligent acts or omissions—are insufficient to sustain a constitutional claim. *See generally Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding no due process violation for grossly negligent conduct; the scienter requires intentional, deliberate, or reckless conduct). Moreover, many of the claims against Becker are barred by absolute prosecutorial immunity. *See Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (explaining that prosecutors have absolute immunity for their role as advocates). Any remaining concerns about Becker's or the individual law enforcement officers' conduct are barred by the doctrine of qualified immunity because there are no allegations or arguments offered by Scholz that their conduct constituted a violation of his constitutional rights or that those rights were clearly established. *Palacios v. Fortuna*, 61 F.4th 1248, 1263 (10th Cir. 2023) (affirming the district court's finding of qualified immunity where there was no constitutional violation).

⁷ The entire docket and all underlying pleadings concerning the state criminal prosecution can be found by querying the Kansas District Court Public Access Portal. That tool is available at https://prodportal.kscourts.gov/prodportal.

the plaintiff failed to allege that the proceedings terminated in his favor).

### C

In Count I, Scholz asserts an official-capacity claim against the Atchison County Sheriff's Department and Sheriff Jack Laurie. Doc. 14 at ¶ 7. That claim fails for at least two reasons.

*First*, there is no independent cause of action for *Monell* liability as the Amended Complaint purports to envision. Instead, the *Monell* doctrine generally describes the requirement for imposing liability against a municipal entity (or its officers in their official capacity). In order to state a claim against a municipality, a policy or custom must have caused the underlying deprivation. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). The Tenth Circuit has "recognized as policies meeting this standard" those that "aris[e] from a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020) (internal citations and quotation marks omitted). As to inadequate training claims, like Scholz's, there must be allegations that the municipality acted or failed to act with deliberate indifference to the known or obvious consequences that would inevitably follow. *Waller v. City & County of Denver*, 932 F.3d 1277, 1284 (relying on *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407-08 (1997)).

The Amended Complaint alleges no acts or omissions that satisfy imposing liability under *Monell* or its progeny. Scholz does not allege what the municipal custom or policy was, the reasons the training was known to be insufficient, or the clarity of the link between the policy and his alleged constitutional injury. Rather, his allegations focus on the officers' allegedly negligent examination of the alleged crime scene, *id.* at ¶¶ 14, 32, their negligent interview of L.L., *id.* at ¶¶ 60, 61, and the generally negligent investigation, *id.* at ¶¶ 28. That will not do. *Waller*, 932 F.3d at 1285-86 (affirming dismissal of municipal liability claim because there was no allegation of a direct causal link or any pattern of conduct that would establish deliberate indifference).

*Second*, there can be no municipal liability where a complaint fails to allege one or more individuals' conduct violated the plaintiff's constitutional rights. *See Mann v. Hyler*, 918 F.3d 1109, 1117 (10th Cir. 2019) (affirming the lower court's finding that no municipal liability could attach where there was no constitutional violation). That rule precludes relief because, as noted, *supra*, Scholz has failed to state a claim against any of the officials from Atchison County.

### III

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. 19, is GRANTED.

It is so ordered.

Date: November 7, 2025                     s/ Toby Crouse
                                                      Toby Crouse
                                                      United States District Judge